■ EPSTEIN REISS & GOODMAN, Appellant, v SAMUEL GREENFIELD, Respondent. — Order, Appellate Term, First Department, entered June 2, 1983, which reversed an order, Civil Court, New York County (Tompkins, J.), entered September 30, 1982, granting plaintiff partial summary judgment on its cause of action on an account stated, affirmed, with costs and disbursements. ¶ Plaintiff, a law firm, was retained on August 11, 1981 by defendant

and his brother to determine the status of the administration of their father's estate. The retainer agreement provided that if plaintiff could not obtain the necessary information from the executors or their attorney it was to take the necessary steps to compel an accounting. The agreement further provided for a retainer of $1,500, payment of which was made simultaneously with the execution of the agreement. Plaintiff was to compute its fee at the rate of $35 per hour and to "advise [defendant] periodically [as to] how much of the retainer ha[d] been used up." Over the course of six months, beginning in October, 1981, plaintiff submitted seven billing statements, which defendant ignored. ¶ Plaintiff moved successfully in the Civil Court for partial summary judgment on its cause of action on an account stated for services rendered and Appellate Term reversed. Since we believe that several questions of fact are presented which preclude the grant of summary judgment, we affirm. ¶ The case for an account stated rests solely on defendant's failure to protest the seven billing statements, each showing a balance due. None of the statements recited the services performed or, despite the provision in the retainer agreement for compensation at an hourly rate, even the number of hours expended. Moreover, the very first billing, dated October 2, 1981, almost two months after the retainer agreement had been signed, showed a charge of $2,282.50, leaving a balance due of $782.50 after crediting defendant with the $1,500 already paid. Thus, contrary to the specific terms of the agreement, the $1,500 retainer was exhausted and additional fees charged without any prior notice to defendant. In light of plaintiff's failure to apprise him periodically of the state of the account before exhaustion of the retainer, defendant's silence cannot be interpreted as an unequivocal assent to the balance stated, especially since an issue is presented as to whether plaintiff was given blanket authorization to provide services, the remuneration for which would exceed the $1,500 retainer, without prior notice. ¶ On November 10, 1981, apparently as a result of plaintiff's efforts, an accounting was, in fact, filed in the Surrogate's Court by one of the coexecutors. Defendant asserts that once the accounting was filed the retainer was at an end and that he never requested any additional services. The first billing statement submitted after the filing of the accounting, on December 7, 1981, was for services rendered to November 18, 1981, and reflected a balance due of $2,459.38. Defendant was later billed $1,800 for services rendered after November 18, 1981, plus disbursements of $40. Thus, further questions are presented as to whether the services rendered after November 18, 1981 and subsequent to the filing of the accounting, were authorized by the retainer agreement. Even if the services were authorized defendant was entitled, at the very least, to an explanation as to the nature of the services and the number of hours expended. Indeed the absence of any explanation in any of the bills as to the services performed compels scrutiny of all the fees requested. Except where the agreement provides otherwise, the payment of a retainer does not authorize an attorney to impose charges without accounting for their reasonableness. ¶ Without offering any proof that defendant was aware of the nature of the services rendered, the necessity of such services or the amount of time expended, plaintiff points only to defendant's silence. Of course, "while the mere silence and failure to object to an account stated cannot be construed as an agreement to the correctness of the account, the factual situation attending the particular transactions may be such that, in the absence of an objection made within a reasonable time, an implied account may be found". (*Interman Ind. Prods. v R.S.M. Electron Power*, 37 NY2d 151, 154, citing *Corr v Hoffman,* 256 NY 254, 266.) The record before us, however, does not compel such an inference, and, thus, summary judgment is unwarranted. Concur — Sandler, J. P., Sullivan and Carro, JJ.

Fein and Alexander, JJ., dissent in a memorandum by Alexander, J., as follows: The order of the Appellate Term should be reversed and Special Term's grant of partial summary judgment reinstated. ¶ None of the "issues of fact" cited by the majority are raised by the respondent either in his opposition to the motion for summary judgment or on this appeal. Indeed, respondent has never denied that legal services were performed at his special instance and request; rather his carefully worded affidavit merely argues that "plaintiff was only entitled to $500.00, although paid $1,500.00". Such an assertion is patently insufficient to defeat a motion for summary judgment. As has repeatedly been held by this and other courts: "A party opposing summary judgment must lay bare [his] proofs so that the matters raised in the pleadings are shown to be real and capable of being established upon trial (*Norton & Co. v Roslyn Targ Literary Agency,* 81 AD2d 798). One who seeks to defeat summary judgment must make a showing by producing evidentiary proof in admissible form showing facts sufficient to require a trial. (*Zuckerman v City of New York,* 49 NY2d 557)." (*Glazer v Falberg,* 85 AD2d 938, 939.) ¶ Here, as in *Glazer,* defendant's assertion that plaintiff failed to perform essential legal services is unsupported by any evidentiary showing. "Nor is there any showing that defendant ever protested the agreement or plaintiff's performance as a lawyer prior to the institution of this suit" (*Glazer v Falberg, supra,* at p 939). The majority points to the fact that the bills were not itemized either as to the services performed or as to the hours spent in the performance, although acknowledging that defendant "fail(ed) to protest the seven billing statements". Lack of itemization of the bills will not defeat the establishment of a cause of action for an account stated (*Fink, Weinberger, Fredman, Berman & Lowell, P. C. v Petrides,* 80 AD2d 781) since "if a party receiving a statement of account keeps it without objecting to it within a reasonable time" an agreement may be implied "because the party receiving the account is bound to examine the statement and object to it, if objection there be. Silence is deemed acquiescence and warrants enforcement of the implied agreement to pay" (*Chisholm-Ryder Co. v Sommer & Sommer,* 70 AD2d 429, 431). Today's decision effectively abrogates the rule that "[a]n attorney may contract with his client on the cost of his past or future services * * * and an account stated may exist between them [citations omitted]. *In the absence of fraud, mistake or other equitable considerations making it improper to recognize the agreement, it is conclusive*" (*Chisholm-Ryder Co. v Sommer & Sommer, supra,* at p 431; emphasis added). ¶ We deal here not with a lay defendant, perhaps unaware of professional billing customs, but rather with a doctor who no doubt is wise to the ways of professional billing, probably having rendered similar unitemized bills for his services. This court should not aid him in his effort to avoid his just debt or to prolong its collection.